IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| WILLIAM A. RODRIGUEZ, JR.; dba | § | CASE NO: 06-31471 |
| AERIAL IMAGEWORX, *et al* | § | |
| Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| BANCO POPULAR, NORTH AMERICA | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3467 |
| | § | |
| WILLIAM A. RODRIGUEZ, JR., *et al* | § | |
| Defendant(s) | § | |

**<u>MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT</u>**

William and Patricia Rodriguez ("Debtors") were officers, shareholders and directors of

Precision Worx Corporation ("Borrower").  Borrower purchased eight Tuxedo Junction Stores in

Harris County, Texas, and borrowed $552,000 from Banco Popular North America ("BPNA").

In connection with the loan, Borrower executed a Promissory Note ("Note"), Loan Agreement

and Security Agreement.  The documents were signed on or about August 30, 2005.  At the time

of the Note, Debtors also executed an Unconditional Guarantee, guaranteeing payment of the

note.  Debtors also executed an instrument captioned, "Mortgage, Assignment of Rents, Security

Agreement and Fixture Filing" ("Mortgage") granting BPNA a lien on Debtors' homestead

located in Hartford County, Connecticut.  The Note, Loan Agreement, Security Agreement,

Unconditional Guarantee, and Mortgage shall collectively be referred to as the "documents."

BPNA failed to perfect the lien on the homestead.

The first monthly payment was due on the Note on September 28, 2005.  Borrower failed to make the payment and was in default as of September 29, 2005.[1]  On October 3, 2005, Debtors sold the homestead and moved to Texas.  Debtors claim that at the time of closing on the loan, their Connecticut homestead was for sale.

BPNA alleges that after satisfaction of the first and second liens on the Connecticut homestead, Debtors received a net amount of $142,131.02 ("proceeds").  Debtors allegedly used a portion of these proceeds to purchase a Texas homestead and to operate the Tuxedo Junction Business.

Debtors filed bankruptcy on April 7, 2006.  BPNA subsequently brought this adversary proceeding alleging that Debtors willfully and intentionally withheld information from BPNA regarding their intent to sell the mortgaged property within 35 days of the execution of the documents.  BPNA asserts Debtors' debt is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).  Both BPNA and Debtors have filed motions for summary judgment.

*Summary Judgment Standard*

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).  Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party.  *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.  At all times, a court views the

---

[1] BPNA alleges that on November 7, 2006, debtors made their one and only payment of $7,067.41

facts in the light most favorable to the non-moving party.  *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006).  However, to weigh evidence would result in a credibility determination which is not part of the summary judgment analysis.  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006)**.**  A court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact.  *Warfield*, 436 F.3d at 557.  The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005).  When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its position.  *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim.  *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006).  The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims.  10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 1998).  At this time the non-moving party must respond with sufficient evidence to support

the challenged element of its case or present evidence to raise a material issue of fact. *Id.; Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 197.

*11 U.S.C. § 523: Exceptions to Discharge*

The discharge in bankruptcy is to protect the "honest but unfortunate debtor" and to give the debtor a fresh start. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). There are several debts, however, that for public policy reasons are excepted from discharge. These debts include liabilities the debtor has incurred due to malfeasant activity. *See Cohen v. de la Cruz.*, 523 U.S. 213, 222 (1998). Congress has codified this principle in 11 U.S.C. § 523(a). *Id.* (quoting *Grogan*, 498 U.S. at 287) ("The various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress 'that the creditors interest in recovering full payment of debts in these categories outweight[s] the debtors' interests in a complete fresh start.'").

*11 U.S.C. § 523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). BPNA's summary judgment alleges that Debtors obtained a debt for money or an extension of credit by false pretenses or a false representation.

For the debtor's representation to constitute "false pretenses" or a "false representation" the representation must have been (1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied on by the other party. *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995) (citing *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992)). For a

past or current fact, the Fifth Circuit has held that "a promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached." *In re Allison*, 960 F.2d 481, 484 (5th Cir. 1992) (citing *In re Bercier,* 934 F.2d 689 (5th Cir.1991)).   However, a debtor's misrepresentations of his intentions "may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised."  *In re Allison*, 960 F.2d at 484.

BPNA alleges it extended credit "based upon representations made in the express terms of the documents that its security interest in the mortgaged property would be protected."  BPNA's Motion for Summ. J. ¶ 36.  BPNA refers to the following in the Mortgage, signed by Debtors,  in asserting that Debtors made false representations: (1) under § 5.2 the Mortgagor is not allowed to transfer or contract to transfer the property or any interest therein; (2) if the Mortgagor does transfer or contract to transfer the property or any interest therein, § 6.2 states a default occurs; (3) in the event of default, § 7.14 dictates that the proceeds of any sale shall be applied by Mortgagee to the payment of Debtor's obligations.  BPNA alleges that in signing the documents, Debtors knew, at that time, they would not abide by the Mortgage Provisions and, therefore, the representations included therein were false. Resp. to Defs.' Mot. for Summ. J. ¶ 16.

Debtors have not filed a direct response to BPNA's motion for summary judgment. Debtors have, however, filed a motion for summary judgment (doc. no. 20) asserting two arguments as to why the debt should not be excepted from discharge under § 523(a)(2)(A).

The Debtors first argument stems from BPNA's failure to timely perfect its lien on Debtors' homestead.  Debtors state:

> First, when the Debtors signed the unconditional guaranty and the Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, the Debtors they did not knowingly and intentionally sign the documents with the intent to defraud BANCO POPULAR, N.A. In fact, if BANCO POPULAR had recorded the

> Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, we
> wouldn't be here. Nothing the Debtors did prevented BANCO POPULAR, N.A.
> from filing the lien document within the 34 days after closing of the loan.

Def's Mo. For Summ. J. p. 5.  Debtors have also argued that BPNA never "intended to record

the lien" and that had BPNA "placed the lien on the Connecticut homestead, [Debtors] would

have had to negotiate the release of at least a portion of the proceeds so that [Debtors] could

relocate to Texas and purchase a new homestead."  Defs.' Mo. for Summ. J. page 2; Aff. of

William A. Rodriguez. Jr. ¶ 8.  While it is not clearly stated, the Court believes Debtors are

arguing that they could not have had intent at the time of signing the lien documents because

they either anticipated BPNA would perfect the lien and therefore protect its interests or they had

an agreement with BPNA to not perfect the lien and, therefore, allow Debtors unimpeded access

to the net proceeds.

For their second argument, Debtors assert that BPNA could not have relied to its

detriment on the Debtors signing the documents because BPNA knew Debtors were selling their

homestead and, therefore, BPNA's "only real reliance should have been with the filing of the

lien documents. . . ."  *Id.*

In response, BPNA asserts that the statement of expected renegotiation if a lien was

placed on the Connecticut homestead shows that Debtors obtained credit through false pretenses

or a false representation regarding their intent to pledge the equity in the Connecticut homestead

to secure the Note and their intent to protect BPNA's interest in the property.  Resp. to Defs.'

Mo. for Summ. J. ¶ 13.

The Court finds neither party has met its burden to warrant summary judgment as to the

claim under § 523(a)(2)(A).  Debtors' assertion that the homestead was for sale at the time of

signing the documents and that it knew at the time of signing it would have to renegotiate the

loan if a lien had been placed on the homestead raise concerns that the Debtors may never have

intended to abide by the documents.  Such intentions, if true and unknown to the secured party, may place the debt within the exception § 523(a)(2)(A).  However, if BPNA knew that the homestead was for sale at the time Debtors signed the documents and there was an agreement not to perfect the lien, such facts would tend to negate any claim of reliance, as required by § 523(a)(2)(A), on the representations in the documents.

The Court, therefore, finds issues of fact exist as to whether BPNA knew Debtors were in the process of selling their homestead and whether an agreement was in place allowing Debtors to use the proceeds of the sale.  The same issues determine whether Debtors intended to abide by the documents at the time of signing.  Plaintiffs' motion for summary judgment as to the claim under § 523(a)(2)(A) is denied.  Defendants' motion for summary judgment as to the claim under § 523(a)(2)(A) is denied.

*11 U.S.C. § 523(a)(4):*

Section 523(a)(4) applies to debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  In its complaint, BPNA alleges that it has been damaged by Debtors' conversion of the net proceeds received from the sale of their Connecticut homestead.  BPNA characterizes this alleged conversion as embezzlement.  Debtors have brought a motion for summary judgment as to the § 523(a)(4) claim.  Plaintiffs have not.

In examining the standard for a claim under § 523(a)(4), Debtors correctly recognize that the phrase "while acting in a fiduciary capacity" does not qualify the word embezzlement.  *E.g.* 4 RESNICK & SOMMER COLLIER ON BANKRUPTCY ¶ 523.10[1][d] (15th ed. 2005) ("The phrase 'while acting in a fiduciary capacity' clearly qualifies the words 'fraud or defalcation' and not 'embezzlement' or 'larceny'").  However, the only argument Debtors offer in support of summary judgment as to the § 523(a)(4) claim is that Debtors "did not fraudulently appropriate

another's property . . . [and] . . . even if it is determined that they did, they were not acting in a fiduciary capacity." Defs.' Mo. for Summ. J. p. 7.

Initially, the Court notes that Debtors' statement that they were not acting in a fiduciary capacity is irrelevant. It is not necessary for a party to be acting in a fiduciary capacity for a debt incurred due to embezzlement to be excepted from discharge.

For purposes of § 523(a)(4), federal law applies to define embezzlement. *In re Davenport*, 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006) (citing *In re Hayden*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000)). Under federal law, embezzlement is a "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998). To constitute embezzlement, the fraudulent appropriation must be "of another's property." *In re Davenport*, 353 B.R. at 199; *See e.g. In re Dobek*, 278 B.R. 496, 509 (Bankr. N.D. Ill. 2002) (quoting *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) ("To prove embezzlement, Plaintiff must show that debtor appropriated the funds for her own benefit, and that it did so with fraudulent intent.")). "The burden of proof in an adversary proceeding under 11 U.S.C. § 523 is on the creditor who seeks to show that his debt is not to be discharged." *In re Harrell*, 94 B.R. 86, 90 (Bankr. W.D. Tex. 1988) (citing *Hill v. Smith*, 260 U.S. 592 (1923)). The creditor must prove his case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1990).

The few Texas bankruptcy courts addressing this issue have found that a debtor who sells collateral and fails to remit the proceeds to the secured creditor, may be found to have "appropriated funds," thus meeting the first factor of the embezzlement test. *See In re Harrell*, 94 B.R. 86, 91 (Bankr. W.D. Tex. 1988) (finding debtor who sold collateral "appropriated" creditor's property by failing to "immediately and directly remit . . . the proceeds of the sale" to

the creditor).  *See generally, In re Patton*, 129 B.R. 113 (Bankr. W.D. Tex. 1991) (discussing the elements of embezzlement within the context of § 523(a)(4)).

The majority opinion among other circuits, however, is that "where a creditor holds nothing more than a security interest in a debtor's property, the relationship is insufficient to support a finding of embezzlement." *In re Moller*, No. 04-9121S, 2005 WL 1200916, at *2 (Bankr. N.D. Iowa 2005) (citing *In re Conder*, 196 B.R. 104, 111 (Bankr. W.D. Wis. 1995)).  In *In re Molller*, the court found that the debtors' collateral, and the proceeds thereof, were not property of the secured creditor (and therefore could not be "appropriated" within the meaning of embezzlement) notwithstanding an agreement that the debtors would not sell the collateral without turning the proceeds over to the secured creditor.  *Id.* at *1.

The premise supporting this principle is that when, for example, a bank possesses only a lien, it is neither the owner nor the possessor of the property subject to the lien.  *Id.; In re Ramonat*, 82 B.R. 714, 720 (Bankr. E.D. Pa. 1998) ("[T]he mere existence of a debtor/creditor relationship cannot be a basis for finding that embezzlement occurred; the money belongs to the debtor in such a relationship and use of the money does not amount to embezzlement."); *In re Storms*, 28 B.R. 761, 765 (Bankr. E.D.N.C. 1983) ("Where the parties' conduct indicates a debtor-creditor relation, funds that come into the hands of the debtor belong to him and his subsequent use of them is not embezzlement.").

Therefore, the debtor, as "owner of the collateral", remains the owner of its proceeds, "even though both the collateral and its proceeds [are] subject to a security interest."  *Id.* (citing *In re Contella*, 166 B.R. 26, 30 (Bankr. W.D.N.Y. 1994)); *See In re Nobel*, 179 B.R. 313, 315 (Bankr. M.D. Fla. 1995) (finding secured creditor could not support a claim for embezzlement under § 523(a)(4) because the creditor's interest is "nothing more than a security interest" on the

collateral and on the proceeds obtained from the sale of the collateral.).  Embezzlement in these circumstances, therefore, must fail because "[n]o person can embezzle from himself." *Id.*; *See e.g. In re Marcou*, 209 B.R. 287, 293 (Bankr. E.D.N.Y. 1997) (noting that "where a creditor . . . is neither the owner of nor in possession of the assets, there can be no embezzlement. . .").

The Mortgage, Assignment of Rents, Security Agreement and Fixture Filing between, Debtors and BPNA states the following:

> In order to secure the prompt payment and performance of the Obligations, Mortgagor (a) grants, bargains. . . confirms, warrants and conveys the Real Property unto Mortgagee, all estate, right, title and interest of Mortgagor in and to the Real Property, whether now owned or held or hereafter acquired by Mortgagor, to have and hold the Real Property unto Mortgagee, its successors and assigns forever; and to hold the Real Property unto Mortgagee in fee simple forever; provided that Mortgagor may retain possession of the Real Property until the occurrence of an even of Default.

Mortgage § 2.1.  While the Mortgage does transfer title to BPNA for the purposes of a security agreement, this Court agrees with the circuits noted above and finds that this conveyance does not make the property "another's property" as necessary to support a claim for embezzlement. BPNA may have had contractual rights to the collateral and proceeds therefrom, however, BPNA did not have rights in the collateral consistent with that generally held by "owners."  Under the documents, Debtors had the right of possession and solely held the property rights inherent therein.  *See Phillips v. Washington Legal Found.*, 524 U.S. 156, 170 (1998) (quoting *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945) (internal quotation marks omitted) (Property rights generally consist of the "group of rights which the so-called owner exercises in his dominion of the physical thing, such as the right to possess, use and dispose of it.")).  Absent default by Debtors, BPNA could not possess, use or dispose of the property.  For example, Texas courts have interpreted "owner", as the term relates to a lienholder, under the Texas Tax Code as follows:

> Simply stated, a lienholder is not an "owner" of the property within the common meaning of that term. Typically the lienholder does not enjoy any of the common benefits of ownership. A lienholder ordinarily has no legal right to share in any accretions to the collateral's value, or a legal obligation to bear any risk of lost value. A lienholder ordinarily has no right to possession or use of the property; what rights it has to use and possession are only in the context of its right to take possession of the collateral upon default and sell it pursuant to the security agreement.

*Mitchell v. BankIllinois*, 316 B.R. 891, 897 (S.D. Tex. 2004) (citing *Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex.App.-Dallas 2001, writ denied)) (declining to interpret "owner" to include a secured party in possession of property for purposes of selling it to recover on a debt). The Court finds this definition is equally applicable to the interpretation of "another's property" as to embezzlement and is consistent with the holdings noted above. *See e.g. In re Dobek*, 278 B.R. at 510 (finding original creditor possessing security interest was not the owner of the collateral, stating, "the undisputed facts reveal that the parties intended for the Debtor to have legal title to the [collateral]"). Therefore, while the Mortgage assigns title to BPNA for the purposes of a security agreement, the Court finds that this does not grant BPNA ownership, making the collateral "another's property" as to Debtors.

Accordingly, the Court finds that BPNA was not the owner of the collateral or the proceeds therefrom as required for embezzlement. Debtors' motion for summary judgment as to the § 523(a)(4) claim is granted.

*11 U.S.C. § 523(a)(6):*

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." The burden of proof is on the creditor to establish "by a preponderance of the evidence that his claim is not dischargeable. . ." *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

A willful injury requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *In re Grisham*, 45 B.R. 65, 71 (Bankr. N.D. Tex. 2000) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). "The creditor must establish 'either an objective certainty of harm or a subjective motive to cause harm.'" *Id.* (quoting *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998)). If the creditor can show that the debtor deliberately and intentionally failed to remit proceeds of collateral to a secured party, as required under a security agreement, the creditor may be able prevail on a claim of non-dischargeability under § 523(a)(6). *See In re Grisham*, 245 B.R. at 73-74.

To be malicious, the injury must occur "without just cause or excuse." *Id.* (citing *In re Garner*, 56 F.3d 677, 681 (5th Cir. 1995)). Malice as required under § 523(a)(6) may be inferred if the debtor acts "in a manner which one knows will place a lender at risk, such as converting property in which the lender holds a security interest. . . ." *In re Theroux*, No. 94-50530, 1995 WL 103342, * 3 (5th Cir. Feb. 27, 1995) (citing *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480 (5th Cir. 1986)). When a debtor is an experienced businessman, it may be reasonable to infer that the debtor knows disposing of collateral will "jeopardize" the lender's security interest. *Id.*

The documents presented to the Court show that BPNA had a security interest in the Connecticut homestead and any net proceeds therefrom. The documents state that if the homestead were sold, Debtors would be in default and the proceeds from the sale were to be applied to the payment of Debtor's obligation. Debtors do not dispute the validity of the documents. Indeed, the Debtors' admission that they would have had to renegotiate the lien if it had been perfected supports a finding that Debtors recognized the documents' legal effect. Debtors, however, have asserted that BPNA knew the Connecticut homestead was for sale at the

time it entered into the security agreement and that BPNA intentionally did not record the security interest so that the net proceeds of the sale would be available to the Debtors.  Debtors have effectively asserted that the alleged agreement to renegotiate coupled with the allegation that BPNA lacked intent to record the lien show that an agreement existed between BPNA and Debtors as to the use of the net proceeds from the sale of the collateral.

For the debt to be excepted from discharge under § 523(a)(6), BPNA has the burden of establishing by a preponderance of the evidence that Debtors either acted with an objective certainty of harm or had a subjective motive to cause harm.  *In re Grisham*, 45 B.R. at 71.  While under the strict language of the documents, Debtors may be found liable for misusing funds which were payable to BPNA, Debtors have raised a fact question as to whether BPNA knew the homestead was for sale and whether BPNA intended to allow Debtors to use the proceeds of the sale in a manner inconsistent with the written loan documents.  These allegations, while not conclusively establishing the contrary, negate a finding on summary judgment that Debtors acted in a willful and malicious manner with an objective certainty or a subjective motive to cause harm to BPNA.  Plaintiff's motion for summary judgment as to the claim under § 523(a)(6) is denied.  Defendants motion for summary judgment as to the claim under § 523(a)(6) is denied.  A separate order will issue.

Signed at Houston, Texas, on February 15, 2007.

MARVIN ISGUR
United States Bankruptcy Judge